IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| AMERICAN EAGLE COATINGS, INC., | ) | Bankruptcy Case No. |
| | ) | 04-41881 |
| Debtor. | ) | |
| | ) | |
| ROBERT PUMMILL | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 05-4111 |
| | ) | |
| JOHN F. MCGIVERN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This adversary comes before the Court on the Motion for Summary Judgment filed by Robert
Pummill, Chapter 7 Trustee ("Trustee"), against John F. McGivern, et al. ("Defendants"), on Counts
I, IV, V and VI and a Motion for Summary Judgment filed by Defendants against Plaintiff on Counts
I, II, III, IV, V, VI and VII.  The Plaintiff informed the Court at the hearing that he was dropping
Counts II and VII and the parties have since filed a stipulated dismissal of those counts.  This is a
core proceeding under 28 U.S.C. §157(b)(2)(A), (E), (F), (H) and (O)  over which the Court has
jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1).  The following constitutes my
Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of
Bankruptcy Procedure.  For the reasons set forth below, the Court denies Plaintiff's Motion for
Summary Judgment on Counts I, IV, V and VI, denies Defendants' motion for summary judgment
on Counts I, III, IV, and V, and grants Defendants' motion for summary judgment on Count VI.

## I.  STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Bankruptcy Procedure 7056( c), applying Federal Rule of Civil

Procedure 56 ( c), provides that summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317,

322 (1986).  The party moving for summary judgment has the initial burden of proving that there

is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161

(1970).  Once the moving party has met this initial burden of proof, the non-moving party must

set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its

pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "A 'genuine issue' in the context of a

motion for summary judgment is not simply a 'metaphysical doubt as to the material facts'." *Id*.

Rather, "a genuine issue exists when the evidence is such that a reasonable fact finder could find

for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir.1994).  When

reviewing the record for summary judgment, the court is required to draw all reasonable

inferences in favor of the non-movant; however, the court is "not required to draw every

conceivable inference from the record-only those inferences that are reasonable." *Bank Leumi

Le-isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

## II.  PROCEDURAL BACKGROUND

On March 31, 2004, Debtor filed a petition in bankruptcy under Chapter 7.  On June 3,

2005, Trustee filed a complaint against Defendants seeking recovery under seven separate

claims: Count I: Recovery for payments made under a participation agreement between debtor

and certain defendants; Count II: recovery for payments made under equipment leases; Count III:

recovery for the value of improvements allegedly made by debtor to real property it leased from

Defendant McGivern Trust; Count IV: recovery for payments made by debtor to certain of the

Defendants pursuant to a stock purchase agreement; Count V: recovery for the value of the real

property leased by Debtor under the theory that the lease was a disguised financing arrangement;

Count VI: recovery for payments made by debtor to certain of the Defendants that were allegedly

preferential payments to insiders within one year of the bankruptcy filing; and Count VII:

recovery for the value of accounts receivables that were purchased from debtor under a factoring

agreement.

On July 11, 2005, Defendants filed an answer to the complaint and made a demand for

jury trial.  Following discovery, on March 17, 2006, Trustee filed a motion for summary

judgment on Counts I, IV, V and VI.  On the same date, Defendants filed a motion for summary

judgment as to all seven counts.  On April 5, 2006, Defendants filed suggestions in opposition to

Trustee's motion for summary judgment.  Also on April 5, Trustee filed a responses to

Defendants' statement of uncontroverted facts and motion for summary judgment and a reply

brief in support of Plaintiff's motion for summary judgment.  On May 9, 2006, the Court held a

hearing on the motions for summary judgment.  At the hearing, the parties stated that the

Trustee's and Defendants' motions for summary judgment on Counts I, IV, V and VI and

Defendants' motion for summary judgment on Count III were at issue and that Plaintiff was

dropping Counts II and VII.  On October 11, 2006, the parties filed a stipulated

dismissal of Counts II and VII.

## III.  FACTUAL BACKGROUND

Debtor, American Eagle Coatings, was formed on August 11, 1998, as a corporation dealing in the application of industrial and commercial coatings.  The president of Debtor was Peter Brisbois.  The shareholders of Debtor at the time of organization were Brisbois and defendant McGivern, Inc.  Each contributed $25,000 and obtained 50% of the shares of the company.  All organization documents have been submitted as exhibits.  On the same date as formation, the shareholders entered into a Shareholders Agreement in which McGivern, Inc. was appointed voting trustee for both shareholders.  The parties also entered into Stock Option Agreements and Sale Option Agreements. Also on that date, Debtor entered into an Operating Agreement.  The operating Agreement provided that Debtor would pay McGivern, Inc. 11.5% of the price of all contracts entered into as participation fees.

Subsequently, McGivern, Inc. transferred its shares to Jack McGivern and John McGivern in equal amounts.  On September 6, 2002, Debtor purchased the shares of Jack and John McGivern for an amount that is disputed by the parties and the parties entered into Stock Purchase Agreements.  Debtor did pay to the McGiverns $500,000 at the time of the sale and entered into buy-out notes to pay to each the balance in the amount of $147,275.59.  Thereafter, Debtor recorded the shares as treasury stock.

In July 2000, Brisbois entered into a contract for the purchase of property in Peculiar Missouri (the "Main Street Property").  Thereafter, Debtor assigned its rights in the property to the McGivern Trust, which ultimately purchased the property for $250,000.  Debtor then leased the property from McGivern Trust.  The lease was what is commonly described as a triple net lease.  Debtor was responsible for the costs of all taxes, insurance and maintenance of the

4

property.  Debtor was also responsible for the costs of any improvements to the property.  Debtor

claims to have expended approximately $125,000 in improvements to the property.  The parties

also entered into a Purchase Option agreement in which Debtor had the option, at the  7, 10, 15

or 20 year anniversaries of the lease, to purchase the property for a price determined by a

formula set forth in the document.  Debtor made rental payments to McGivern Trust from

August 2000 through January 2004.

On March 31, 2004, Debtor filed a Chapter 7 petition in bankruptcy.  On that same date,

McGivern Trust sold the Main Street Property for $300,000.  The property was then re-sold for

$350,000.

## IV.  DISCUSSION AND ANALYSIS

### A.  Recovery of Participation Fees

In Count I of the complaint, Plaintiff seeks recovery from Defendants John and Jack

McGivern for amounts paid pursuant to the Participation Agreement on three legal theories.

Plaintiff contends that the amounts paid pursuant to the Participation Agreement after

September 6, 2002 are avoidable as constructively fraudulent transfers pursuant to Mo. Rev.

Stat. § 428.029.1 upon which Plaintiff may rely pursuant to § 544(b) of the Bankruptcy Code.

Secondly, Plaintiff contends that the authorization and payment of such fees given the financial

circumstances of the Debtor at the time constituted a breach of fiduciary duty for which the

Defendants are responsible.  Finally, Plaintiff also contends that participation fees paid,

including those paid prior to September 6, 2002 were paid pursuant to a contract of adhesion that

was unconscionable.

## 1.  Fraudulent Transfer

Plaintiff does not contend that the transfers were actually fraudulent, but that they are avoidable on the grounds of constructive fraud.  In order to recover on that theory, Plaintiff is required to demonstrate that the company was insolvent at the time the transfers occurred or rendered insolvent by such transfers and that the company did not receive reasonably equivalent value in exchange for the transfers.  The Court finds that the Plaintiff has failed to demonstrate that there is no genuine issue as to either of these material facts and accordingly will deny Plaintiff's motion for summary judgment as to this claim.  Conversely, neither does the Court believe that the Defendants have demonstrated that the company was solvent or that it received reasonably equivalent value in exchange for the transfers and will similarly deny Defendants' motion for summary judgment on this claim.

In order to obtain summary judgment on the fraudulent transfer claim, Plaintiff must demonstrate that there is no genuine issue as to material fact and that he is entitled to judgment as a matter of law finding that the Debtor was insolvent during the period that the participation fees were paid.  The Court discusses the evidence and its conclusions with respect to Debtor's financial condition in its ruling on Count IV relating to payments made under the Stock Purchase Agreement because that is where the parties have chosen to discuss these issues in their motions for summary judgment.  There the Court finds that neither party has demonstrated that there is no genuine issue as to the question of the corporation's solvency or insolvency.

Assessing whether the Debtor received reasonably equivalent value in exchange for the participation fees paid requires that the Court both ascertain the amount of fees paid and identify the services received in exchange and their value.  The amount of participation fees paid to the

Defendants subsequent to September 6, 2002 which Plaintiff seeks to avoid is apparently

$101,842.56.  Defendants contend that in exchange for those services they not only reviewed

bids and provided advice to the corporation on those matters, but also performed other

consulting services, provided bonding assistance and offered certain free legal advice.  Plaintiff

first argues that the Court should not consider any services allegedly rendered by the Defendants

to the corporation other than the review of bids on the grounds that would be contrary to the

agreement which specifies that the participation fees were payable for certain specific services

and were payable in addition to any other amounts owed.  As Defendants point out, however, the

same provision of the agreement provides that the participation fee is payable for participation

"whatever form such participation takes."  Consequently, if other valuable services were

performed by which the corporation benefitted in exchange for the participation fees, the Court

should consider the evidence of value of those services.  Neither side, however, provides the

Court with any evidence from which it might ascertain what that value might be.  As a result, the

Court cannot render a conclusion as to whether the Debtor did or did not receive reasonably

equivalent value and neither side should be entitled to summary judgment on this point.

Brisbois' conclusory assertion that the value of the services rendered was "not even close" to the

amount of the participation fees is hardly a sufficient basis for this Court to find that there is no

genuine issue of material fact on the question of reasonably equivalent value.

## 2.  Breach of Fiduciary Duty

Plaintiff next contends that participation fees should be recovered from the Defendants

for the reason that the payment of those fees constituted a breach by them of their fiduciary duty

to the corporation.  Plaintiff contends that when a corporation enters into the zone of insolvency,

the duties of those in control of the company shift from the company's shareholders to its

creditors.  One difficulty with Plaintiff's request for summary judgment on this theory of

recovery is that as noted above, the Court finds that Plaintiff has not established that the Debtor

was insolvent or, if so, on what date it became insolvent.  Given that fact, the Court cannot find

that at the time the participation fees were paid or authorized to be paid to the Defendants, the

corporation was either insolvent or in the zone of insolvency.  In addition, whether the

Defendants breached a fiduciary duty by causing the company to pay these fees would also

depend in part upon whether the Debtor obtained reasonably equivalent value for those services.

Plaintiff fails to identify which breach of duty the Defendants allegedly committed – a breach of

the duty of loyalty or a breach of the duty of care.  In either event, it would seem that if the

corporation received value in exchange for the services provided reasonably equivalent to the

amounts paid, it would have suffered no damage and there would be no breach of fiduciary duty.

Since, as noted above, the Court finds that Plaintiff has failed to establish this fact, he is not

entitled to summary judgment.  Conversely, because the Defendants have failed to establish that

the corporation received reasonably equivalent value in exchange for the participation fees paid

or that the corporation was solvent at the time, they have not demonstrated an entitlement to

summary judgment on this issue.

### 3.  Unconscionability

Finally, Plaintiff also seeks recovery of the participation fees paid on the grounds that the

Participation Agreement was a contract of adhesion and was unconscionable, both of which

Plaintiff must demonstrate under the applicable law in order to obtain relief.  Plaintiff cannot

obtain relief merely by demonstrating that the contract is one that the law might regard as a

contract of adhesion. *See Hartland Computer Leasing Corp., Inc. v. The Insurance Man, Inc.*, 770 S.W.2d 525, 527 (Mo. Ct. App. 1989); *Vincent v. Schneider*, 194 S.W.3d 853, 857-58 (Mo. 2006). Demonstrating that a contract is a contract of adhesion requires that there have been some unequal bargaining power among the parties. The courts are reluctant to make such a finding in the case of contracts between sophisticated commercial parties. *See Purcell Tire & Rubber Co., Inc. v. Executive Beechcraft, Inc.*, 59 S.W.3d 505, 509-10 (Mo. 2001). Plaintiff's assertion of unequal bargaining power appears to center on the fact that the Participation Agreement was drafted at the same time as other corporate formative documents and that it was prepared by a lawyer for the McGiverns. The Court regards this insufficient to establish as a matter of law that there is unequal bargaining power. As Defendants alleged, the evidence establishes that the documents were discussed among the parties prior to execution and drafts were exchanged. In addition, Brisbois had certain business experience himself. At best, the evidence establishes the existence of a dispute as to whether there was sufficient disparity in bargaining power to regard this as a contract of adhesion.

In addition, Plaintiff would bear the burden of demonstrating that the terms of the agreement were unconscionable which would seem, once again to turn on whether the company received fair value for the payments made, an issue on which, as the Court noted above the evidence is sparse. Accordingly, the Court finds that the Plaintiff has not established that there is no genuine issue as to whether the Participation Agreement was an unconscionable contract of adhesion and denies the motion for summary judgment on this basis. Similarly, the Court believes that Defendants have failed to demonstrate that there is no genuine issue of fact and that the evidence establishes equal bargaining power or that the terms were not unconscionable and,

therefore, denies Defendants' motion for summary judgment on this ground as well.

In their motion for summary judgment, Defendants ask the Court to dismiss the adhesion/unconscionability claim asserting it is barred by the five year statute of limitations for actions on contracts under Mo. Rev. Stat. § 516.120.  Defendants allege that the statute of limitations has expired because the agreement was executed in August 1998 and this suit seeking to recover amounts paid under the agreement was commenced more than five years after that date.  Plaintiff counters by noting that the statute of limitations does not begin to run until such time as the corporation suffers damage and it is capable of ascertainment.  He contends the former would not have occurred until it made payments and alleges, citing an affidavit filed with his own papers that all of the payments made under the Participation Agreement were made within five years of the commencement of the suit.  Defendants have the burden of proof on this question.  On this record, Defendants have not demonstrated that the relief requested is barred by the applicable statute of limitations.  The Court will defer determination of the statute of limitations defense until the record is more fully developed on the question of when the corporation sustained damage which was capable of ascertainment and if that occurred outside the applicable limitations period.

Defendants also contend that the Participation Agreement ceased to be operative among the parties after the buyout in September 2002 when the McGiverns ceased to be shareholders and to be entitled to payments under the agreement.  Defendants contend that the agreement was fully performed as of that date and that Plaintiff is not at this point entitled to assert that payments under it are recoverable.  They cite *USA Chem., Inc. v. Lewis*, 557 S.W.2d 15 (Mo. Ct. App. 1977) for the proposition that a party to a contract cannot assert unconscionability or

adhesion after receipt of benefits under the contract.  However, the cited case does not support

such a general proposition.  In that case, the company brought suit against a former employee to

enforce the terms of a non-compete provision in an employment contract.  The employee

defended on the ground that the agreement was an unconscionable contract of adhesion.  The

court denied relief to the employee noting that he had "accepted employment."  The court makes

that observation in the context of demonstrating that there was no coercion.  The court notes the

employer's performance only in the context of finding that there was mutuality of consideration.

The case simply does not stand for the proposition, either in the employment agreement context

or otherwise, that recision or other recovery is barred by having accepted benefits under the

contract.  Accordingly, Defendants have not established that they are entitled to summary

judgment for this reason.

### B.  Stock Purchase Agreement

In Count IV, Plaintiff seeks to recover payments made to Defendants under the Stock

Purchase Agreement consisting of cash and amounts paid on the buyout notes executed in favor

of the Defendants.  Relief is sought in Count IV under the same three theories as contained in

Count I.  Plaintiff's motion for summary judgment, however, does not seek summary judgment

on the grounds that the Stock Purchase Agreement was a contract of adhesion and was

unconscionable, but does seek relief on the grounds that the payments made pursuant to the

agreement were constructively fraudulent transfers and that they represented a breach of

fiduciary duty.

### 1.  Fraudulent Transfer

As to the claim that the payments made pursuant to the Stock Purchase Agreement were

constructively fraudulent transfers, the Court denies the motions for summary judgment for many of the same reasons as it did with respect to similar relief requested on Count I with regard to the participation fees.

The evidence submitted for the record demonstrates that there is a dispute among the parties as to whether the corporation was or became insolvent and, if so, at what point in time. Plaintiff contends that the 2002 financial statement clearly shows the company's liabilities exceeds its assets and contrasts that to the situation shown by previous years' financial statements indicating a positive net worth.  Plaintiffs contend in addition that certain indebtedness, particularly that evidenced by the buyout notes, was omitted from the financial statements.  Defendants assert that a similar amount was improperly shown as a payable on the financial statements and that an appropriate adjustment was required.  Plaintiff also asserts that certain assets were overstated, but fails to adduce evidence identifying the assets and the extent of the overstatement.  Defendants introduced evidence of other balance sheets for periods ending June 2002, June 2003 and September 2003 which show the company as being solvent on those dates.  Those statements were prepared by the company rather than by its outside accountants as had been the financial statements for the year 2002.  The Court concludes that Plaintiff's evidence fails to demonstrate that there is no genuine issue of fact as to the insolvency of the Debtor on and after September 6, 2002.

First, the December 2002 financial statements do not indicate what standard of valuation was employed.  The appropriate standard of valuation for purposes of the applicable fraudulent conveyance statute is "fair valuation."  Accordingly, Plaintiff has not demonstrated that this evidence establishes insolvency pursuant to the applicable statutory standard.  Second, the

financial statements fail to tie the alleged insolvency of the corporation to any particular transfer

that was made and there is no evidence from which the Court can do either retrojection or

projection with regard to any particular transfer which Plaintiff seeks to avoid.  Third, as noted,

there are other financial statements from prior and subsequent periods which appear to show

balance sheet solvency.  Although Plaintiff identified a number of problems with those financial

statements which appear to require adjustments, Plaintiff has failed to demonstrate that with

those adjustments the corporation was insolvent on the relevant dates.  In addition, Plaintiff's

evidence merely suggests that the company-prepared financial statements may be less reliable

than the financial statements prepared by the accountants.  *See, e.g., In re Sheffield Steel Corp.*,

320 B.R. 423, 442-43 (Bankr. N.D. Okla. 2004).

Citing Mo. Rev. Stat. § 428.024, Plaintiff appears to argue that the Stock Purchase

Agreement payments were also fraudulent because they were made at a time when the

corporation was engaged in business for which its assets were unreasonably small or it

reasonably should have believed that it would incur debts beyond its ability to pay as such debts

became due.  In support of that contention, Plaintiff offers the evidence that the financial

statement shows negative profit at the end of 2002 and asserts that the business situation

worsened in 2003.  From these facts, Plaintiff would apparently have the Court draw the

conclusions that: the stock purchase was the reason for the downturn in the corporation's

economic fortunes in the year 2003; that the corporation lacked adequate capital with which to

conduct its business in that year and that those in control should have understood that the Debtor

would be unable to pay its debts as they became due.  However, as Defendants' evidence

demonstrates and Plaintiff concedes, there were other reasons for the corporation's poor

13

economic performance in 2003.  First, Defendants cite the testimony of Brisbois that, viewed

from the point of the execution of the Stock Purchase Agreement, he believed the corporation

was able to satisfy those obligations.  Second, the evidence shows that there were other problems

contributing to the organization's poor performance in 2003 including a decline in the market

resulting from the delayed implications of the attacks on September 11, 2001 and disputes with

certain customers on substantial jobs that delayed or denied the corporation substantial

payments.  Accordingly, Plaintiff has failed to demonstrate with the evidence submitted in

support of the motion for summary judgment that the corporation had unreasonably small capital

with which to continue its business subsequent to the Stock Purchase Agreement or that the

corporation should reasonably have believed that it would incur debts beyond its ability to pay as

they became due.

Plaintiff contends the corporation received no value as a result of having purchased its

stock and cites the case of *In re Roco Corp.*, 21 B.R. 429 (B.A.P. 1ˢᵗ Cir. 1982) in support of that

proposition.  The *Roco* case, however, does not establish that as a matter of law a corporation

repurchasing its own stock receives no value or does not receive reasonably equivalent value.

The question of whether the corporation receives value in purchasing its own stock is a factual

one.  As Plaintiff concedes, the case admits of exceptions if the acquisition facilitated business of

the corporation.  *Roco*, 21 B.R. at 434.  While Defendants suggest certain ways in which the

corporation benefitted from the acquisition of its stock, they have not established that the

corporation received reasonably equivalent value in exchange for the repurchase because they

placed no value on these items and provide no evidence as to those values.  The Court rejects

both the notion that the stock had "inherent value" and the suggestion that because the stock had

14

value to Brisbois it necessarily had value to the company.

Defendants contend that the Stock Purchase Agreement was executed for legitimate business purposes.  Putting aside for the moment whether the Court would regard the purposes cited as legitimate, the Court agrees with Plaintiff's observation that the existence of legitimate business reasons for the transaction is irrelevant to the claims asserted.  Plaintiff contends the buyout transaction was a constructively fraudulent transfer.  Plaintiff may prevail on that claim by demonstrating that the corporation did not receive reasonably equivalent value and at the time was either insolvent or rendered insolvent.  He need not prove, as he would if he were asserting that the transaction was actually fraudulent, that it was done with an intent to hinder, delay or defraud creditors.  *See Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Serv.)*, 322 B.R. 440, 450 (Bankr. N.D. Okla. 2003).  For that reason, the existence of a valid business motive for the transaction is simply irrelevant.  If such legitimate business purposes existed, they would provide no basis for either denying the Plaintiff's motion for summary judgment or granting summary judgment to the Defendants.

## 2. Breach of Fiduciary Duty

As to the breach of fiduciary duty claim, once again, it is predicated at least in part on the notion that the company was rendered insolvent by the transaction, which is a matter of dispute. In addition, Plaintiff seems to assume that a fiduciary duty is breached by entering into a transaction that renders the company insolvent on a balance sheet basis, without citing any authority for that proposition.  Once again, Plaintiff has failed to demonstrate which fiduciary duty – breach of duty of care or duty of loyalty was breached by authorizing the stock purchase transaction and support that breach of duty with evidence.  Similarly, however, Defendants have

failed to affirmatively demonstrate that the corporation was solvent and thus that there could

have been no breach of duty.  For these reasons, the Court denies the motions for summary

judgment on Count IV filed by both the Plaintiff and Defendants.

### C.  Lease vs. Disguised Financing

In Count V, Trustee asserts that Debtor was the owner of the Main Street Property, rather

than a lessee, and that the debt owed to the McGivern Trust was an obligation to repay a loan,

with interest, rather than rent pursuant to a lease.  The Trustee claims that the sale of the property

subsequent to the filing of the petition was an invalid post-petition transfer avoidable under §

549 and the estate is entitled to judgment against the McGivern Trust in the amount of the

$300,000 sale price.

On August 15, 2000, Debtor and defendant McGivern Trust entered into a real property

lease agreement regarding certain property located in Peculiar, Missouri, for the purpose of

Debtor  using such property as its principal place of business.  The lease provided, among other

things that the owner had no obligation to "construct, alter, relocate or finance any improvements

or additions" to the property unless otherwise agreed in writing and that Tenant shall improve

the property for occupancy at its own cost and expense and that all such improvements shall

become property of the owner and shall remain on the property upon termination of the lease.

The parties also entered into a Purchase Option agreement on the same date.  The Option

provided that Debtor would have an option to purchase the property at the 7, 10, 15 and 20 year

anniversaries of the lease.  The purchase price was to be calculated by taking the amount

designated as the "original balance" on the amortization schedule attached to the agreement, less

75% of the amount designated as "principal".  The agreement had attached to it examples of the

method of computation for each anniversary period.

Trustee contends that the "economic realities test" applies and cites *In re Hotel Syracuse, Inc.*, 155 B.R. 824 (Bankr. N.D.N.Y. 1993) and its factors.  The factors set forth in that case are whether the payments are structured to ensure return on investment or to compensate the lessor for the use of land; whether the lessor's purchase price was tied to the fair market value of the property or was calculated as an amount necessary to finance the transaction; whether the property was purchased by the lessor specifically for the lessee's use; whether a lease structure was used for tax advantages; and whether the lessee held the obligations of ownership, i.e., payment of property tax and insurance.

However, recent cases indicate that state law rather than federal law applies in making the determination, unless state law is in conflict with the Code, in which case a federal common law doctrine using a "functional approach" to leases would arguably be applicable.  *See United Airlines, Inc. v. HSBC Bank, USA, N.A.,* 416 F.3d 609 (7th Cir. 2005), *cert. denied*, 126 S.Ct. 1465 (2006).

Missouri state law on the issue is not abundantly clear but cases in a similar context indicate that the Court should look at the totality of the circumstances of the transaction.  It also appears that the actual substance of the transaction controls, rather than its form.  Missouri cases look at the intent of the parties which can be determined from a consideration of the entire instrument, and the circumstances under which it was made.  *See Abberton v. Stephens*, 747 S.W.2d 334 (Mo. Ct. App. 1988) (deed vs. equitable mortgage); *Santa Fe Trail Neighborhood Redevelopment Corp. v. W.F. Coen & Co.*, 154 S.W.3d 432 (Mo. Ct. App. 2005) (lease vs. license).  Missouri cases in the UCC context also use a functional approach in distinguishing

leases from secured credit with respect to personal property.  It has been held that the pivotal

factor in determining whether an instrument is a true lease or security agreement is whether or

not the lessee has an absolute obligation to purchase the property.  *See In re Hoskins*, 266 B.R.

154 (Bankr. W.D. Mo. 2001) and cases cited therein.  In that case the court held that under state

law the focus should still be on the "economic realities" of the transaction.  *Id.* at 161.

Factors that a majority of courts have looked at to determine whether an agreement is a

lease include whether the lessee has a purchase option at the end and, if so, whether the option

price is nominal; whether the aggregate rental payments have a present value equal to or in

excess of the original cost of the leased property; and whether the lease term covers the useful

life of the property.  *In re Integrated Health Services, Inc.*, 260 B.R. 71 (Bankr. D. Del. 2001).

There is no evidence in the record before the Court regarding any of these factors.

Although many of the factors set forth by the economic realities test and the UCC cases

seem to lend themselves to the conclusion that the transaction more closely resembled a

financing arrangement, the Court cannot find that there are no controverted facts when looking at

all of the circumstances and the financial substance of the transaction.  When looking at the

transaction as a whole the Court finds that there are facts in controversy, in particular regarding

the option purchase price and whether that amount could be considered "nominal."  If the option

price is determined to be nominal then the transaction is more likely to be determined a financing

arrangement.  On the other hand, if the option price is based on the fair market value of the

property, then the option price is not considered to be nominal and the transaction more

resembles a true lease.  *See, e.g., In re Morande Enterprises, Inc.*, 346 B.R. 886 (Bankr. M.D.

Fla. 2006).  The parties have not presented sufficient evidence for the Court to determine

18

whether or not the option purchase price would be considered nominal based on the property's

actual value and industry standards.  Defendant argued at the hearing that at the end of a ten year

lease period the option purchase price would be approximately $200,000.  However, no evidence

was presented as to whether this amount should be considered nominal nor comparing the option

price with the cost of continuing under the lease.  Clearly, this Court cannot say that the amount

of $200,000 is nominal as a matter of law.  If the option price is not considered nominal

Defendant may retain a reversionary interest in the property which would support its argument

that the transaction was a true lease arrangement.  Based on the evidence presented, the parties

have not carried their burdens for summary judgment; neither party has adequately established

that the transaction was either a true lease or a financing arrangement.  Thus, the Plaintiff's

motion for summary judgment on Count V is denied and Defendants' motion for summary

judgment on Count V is denied.

### D.  <u>Insider Preferential Transfers</u>

In Count VI, Plaintiff seeks to recover transfers made to certain of the Defendants more

than 90 days, but within the one-year period prior to the filing of the petition.  Specifically,

Plaintiff seeks to recover amounts paid to Jack McGivern and John McGivern under the

participation fee notes and the buyout notes, payments made to the McGivern Trust on the Main

Street lease and payments made to J. F. McGivern, Inc. on various equipment leases.  In order to

establish an entitlement to summary judgment on a preference claim, Plaintiff must demonstrate

that there is no genuine issue as to any material fact necessary to establish liability under § 547.

Among other things, that requires that Plaintiff demonstrate that the Debtor made transfers to or

for the benefit of these entities who were creditors for or on account of an antecedent debt while

the Debtor was insolvent and within the applicable time period.  Since none of the transfers

which Plaintiff seeks to recover was made within the 90-day period prior to the filing, Plaintiff

must demonstrate that the Defendants were insiders during the one-year period prior to the filing

when they received preferential transfers.  For the reasons described below, the Court denies

Plaintiff's motion for summary judgment on the preferential transfer claims, but grants the

motion filed by Defendants on such claims.

First, as noted above, this Court finds that Plaintiff has failed to demonstrate that the

Debtor was insolvent at any particular time.  Having failed to demonstrate insolvency, Plaintiff

has not established one of the essential elements of a claim for the recovery of a preferential

transfer.  Plaintiff is not entitled to the benefit of a presumption of insolvency  for claims

asserted against insiders during the extended reachback period.  Conversely, as also observed

above, the Defendants have failed to demonstrate that the corporation was not insolvent at any

particular time.  As the Court has found above, there is simply a factual dispute as to whether the

Debtor was insolvent and, if so, at what time.

The term "insider" is defined in § 101(31) of the Code to include, in the case of a

corporation, a director, officer, person in control of the debtor or relative of a director, officer or

person in control of the debtor.  As Plaintiff correctly observes, the list is illustrative and not

exclusive, and a person may be an insider notwithstanding the fact that his relationship with the

debtor is not embraced by any of the specific provisions of the definition.  The question in this

case, however, is not so much whether the Defendants were insiders, but whether they were and

were required to be insiders at the time they received the transfers in question.  Plaintiff

concedes that at the time the transfers were received, the Defendants were not in any relationship

to the corporation of the kind specifically set forth in the definition .  Plaintiff's sole argument

appears to be that the Defendants are subject to liability merely by reason of the fact that they

were insiders at the time the transactions pursuant to which the transfers were made were put in

place.

In the motion for summary judgment, Plaintiff cited no authority for this proposition,

although one case was offered as support at the hearing on the motion.  The Court's research

reveals that there is a split of authority on the precise meaning of the phrase "at the time of such

transfer" contained in subsection (b)(4)(B) of § 547.  One line of cases, which Plaintiff urges the

Court to adopt, holds that a creditor who is an insider at the time a transfer of the debtor's

property is arranged is an insider at the time of the transfer.  *EECO Inc. v. Smedes (In re EECO,*

*Inc.)*, 138 B.R. 260 (Bankr. C.D. Cal. 1992); *Chase Manhattan Bank, N.A. v. Dent (In re Trans*

*Air, Inc.)*, 79 B.R. 947 (Bankr. S.D. Fla. 1987); *DeRosa v. Buildex, Inc. (In re F&S Cent. Mfg.*

*Corp.)*, 53 B.R. 842 (Bankr. E.D.N.Y. 1985); *Roemelmeyer v. Mandel (In re Hostellerie*

*d'Argenteuil, Inc.)*, 42 B.R. 292 (Bankr. S.D. Fla. 1984).  Another line of cases, on which the

Defendants rely, holds that the language of § 547(b)(4)(B) clearly provides that an insider

relationship is to be determined on the date of the challenged transfer.  *Mann v. GTCR Golder*

*Rauner, L.L.C.*, ___ B.R. ___, 2006 WL 2474000 (D. Az. 2006); *Kidwell v. Amsouth Bank, N.A.*

*(In re Cavalier Homes of Georgia, Inc.)*, 102 B.R. 878 (M.D. Ga. 1989); *Dent v. Martin (In re*

*Dent)*, 86 B.R. 290 (S.D. Fla. 1988); *Tennessee Wheel & Rubber Co. v. Street (In re Tennessee*

*Wheel & Rubber Co.)*, 62 B.R. 1002 (Bankr. M.D. Tenn. 1986); *Williams v. Gordon (In re Camp*

*Rockhill, Inc.)*, 12 B.R. 829 (Bankr. E.D. Pa. 1981).

After reviewing the cases, the Court believes that the better rule is the one cited in the

latter line of authorities and adopts that position for two reasons.  First, the other view is

inconsistent with the plain meaning of the statute which requires that the Defendants be insiders

"at the time of the transfer."  The Supreme Court has made clear that statutes are to be construed

according to their plain meaning unless to do so would be demonstrably at odds with

Congressional intent or produce an absurd result.  *Lamie v. United States Trustee*, 540 U.S. 526,

534 (2004); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989).  Plaintiff has

not offered the Court any evidence that the result is at odds with Congressional intent, nor that

the result would be absurd.  Bearing on the latter question, and the second reason for the Court's

rejection of Plaintiff's theory is that it would not further any of the policies which were designed

to be supported by the extended reachback period for insiders.  The extended reachback period

was developed to reach insiders on the ground either that they could cause the corporation to

make the transfer, because of their position, or that they might actually have an impact on the

timing of the filing of bankruptcy and thus their liability.

    The evidence does not establish that Defendants were in a position to do either of those

things as to the transfers which Plaintiff seeks to recover.  On the contrary, Plaintiff concedes

that at the time of the transfers, Defendants were in none of the relationships to the corporation

specified by the statute.  He offers no evidence that Defendants were in control of the Debtor at

the time of the transfers.  Neither has he offered any evidence from which the Court might find

that the relationship between the Defendants and Debtor was "sufficiently close" during the one-

year period that the Court should find them to be insiders when the transfers were made.  On the

contrary, Defendants offer evidence demonstrating that the Defendants had no such control,

specifically that at the time of the transfers, they lacked control over the day-to-day operations of

the Debtor or its decisions as to which creditors to pay.  In short, not only has Plaintiff failed to

demonstrate that Defendants had a specific relationship with the corporation such as to warrant

the Court's considering them insiders during the one-year period, Defendants have demonstrated

affirmatively that they did not have such relationships.  Accordingly, the Court denies the

Plaintiff's motion for summary judgment on Count VI and grants Defendants' motion for

summary judgment as to that Count.

To the extent Plaintiff contends that Defendants were insiders at the time the transfers

occurred because the transfers were made at the time they were arranged, the Court rejects the

position as being inconsistent with § 547 for two reasons.  First, § 547(e) defines when a transfer

occurs for purposes of that section and generally provides that it occurs when it takes effect

between the transferor and transferee if perfected at or withing ten days after such time.  The

transfers which Plaintiff seeks to avoid are transfers of individual payments which were paid by

check from the Debtor.  For purposes of § 547(b), such transfers occur on the date on which the

checks clear the Debtor's bank, not on the date of the execution of some agreement, note or lease

creating an obligation to make such payments.  Second, even if the Court were to deem the

transfers made at the time that those agreements were entered into, the transfers would then not

be avoidable for the reason that they would have occurred beyond even the extend reachback

period available for claims against insiders.  For example, although the bankruptcy case was

commenced on March 31, 2004, the Stock Purchase Agreement was entered into on

September 6, 2002 as were the buyout and participation notes the payments on which Plaintiff

seeks to recover from Jack and John McGivern.  The lease agreement the payments on which

Plaintiff seeks recovery of the McGivern Trust was executed on August 15, 2000, more than

three years prior to the filing of the petition.  The record contains no information as to the date of execution of the various equipment leases, the payments on which Plaintiff seeks to recover.

### E.  Defendants' Motion for Summary Judgment- Tenant Improvements

In Count III of the Complaint Plaintiff sought recovery of the value of tenant improvements allegedly made by Debtor to the Main Street Property.  Plaintiff asserts the value of improvements is recoverable from Defendant McGivern Trust because the improvements were made pursuant to contractual agreements that were unconscionable, made under adhesion and made with no consideration being provided to Debtor in exchange therefor.  Plaintiff asserts that the improvements resulted in an increase in the value of the property in the amount of $125,000.

Defendant filed a motion for summary judgment on this count and contends that Plaintiff is essentially making a quantum meruit claim under an implied contract theory.  Defendant argues that because there is an express contract that provides for the tenant to pay for any improvements a quantum meruit claim is precluded.  Alternatively, Defendant argues that if Plaintiff is claiming that the express contract was rescinded because it was unconscionable, a contract of adhesion, and/or made with no consideration, that damages are still limited to the terms of the contract which in this case would be zero.

Defendant also argue that, assuming that Plaintiff can rescind the lease, that he cannot establish damages because there is no evidence of the hours worked or services charged by contractors and that an increase in the value of the property is not sufficient for a quantum meruit claim and that the increase in value of the property was primarily due to location.  Finally, Defendant contends that there was no unjust enrichment to them and that Debtor had no

reasonable expectation of payment because the lease clearly states that improvements will be done at the tenant's expense.  Defendant also contends that there was no unjust enrichment to it because it had no authority to object to improvements and in fact was not kept informed as to the extent of improvements and should not bear the burden of paying for improvements Debtor chose to make.

First, as discussed above under Count I, the Court finds that Defendant has failed to demonstrate that there is no genuine issue of fact and that the evidence establishes equal bargaining power or that the terms were not unconscionable.  As noted above, in order for Plaintiff to recover on a theory that the lease was an unconscionable contract of adhesion, Plaintiff would have to demonstrate both that there was a substantial disparity in bargaining power between the parties to the lease and that the terms were unconscionable.  Defendant McGivern Trust could obtain summary judgment by demonstrating that there was no genuine issue of fact as to either of such matters and that there was either equivalent bargaining power or the terms were not unconscionable.  Defendant has, however, not established either of these things.  No evidence is directed to the question of the bargaining power among the parties at the time of the execution of the real estate lease.  In addition, Defendant has not offered evidence of the kind which might permit the Court to find that the terms were commercially reasonable and therefore not unconscionable.  For example, Defendant does not introduce any evidence of what standard commercial practice in this circumstance might be.  Accordingly, Defendant has not demonstrated an entitlement to summary judgment as to the Plaintiff's claim of unconscionability.

Secondly, regarding Defendant's assertion that Plaintiff is essentially making a quantum

meruit claim under an implied contract theory, the Court does not believe that the facts support a

finding of summary judgment in favor of Defendant.  Defendant seems to concede that if the

Court were to find the lease provision denying recovery for the cost of improvements

unconscionable, Plaintiff might be able to proceed under a quantum meruit theory.  Defendant

argues that that theory is invalid under the circumstances for several reasons.  Some of those

reasons, however, are predicated upon the existence or the language of the very contractual

provision which Plaintiff has asked this Court to invalidate as unconscionable.  For that reason,

the Court rejects the argument that this contractual provision places a limitation on the Plaintiff's

ability to recover.

Defendant contends that Plaintiff cannot recover in quantum meruit if the subject was

covered by an express contractual provision.  However, it is that precise express contractual

provision which Plaintiff has asked this Court to determine unenforceable as being

unconscionable.  However, Defendant has not established as a matter of law that the damages are

limited to the contract terms.  There is differing case law on this issue in Missouri and the Court

believes that the more well-reasoned cases are those that find that courts should not

indiscriminately apply this rule.  *See, e.g., Reed v. Reberry*, 883 S.W.2d 59 (Mo. App. Ct. 1994)

and the cases cited therein.  If a contract is rescinded due to unconscionability, the party

arguably should not then be held to the terms of a purportedly unconscionable contract.   If this

Court were to find the contractual provision unconscionable, there would therefore be no

controlling contractual provision on the subject and the principle Defendant cites would be

inapplicable.  For the same reason, the Court rejects Defendant's argument that Plaintiff's

recovery would be bound by the amount specified in the contract, in this case zero.  If the Court

were to find that limitation unconscionable, it would be somewhat anomalous for it to then apply

the limitation to Plaintiff's attempt to recover.

Plaintiff seeks to recover the cost or value of improvements made by it to the premises.

Defendant argues that Plaintiff has not established by evidence the cost of the improvements

made.  While that may be true and might preclude this Court's entering summary judgment on

behalf of the Plaintiff, it would not authorize this Court to enter an order granting summary

judgment to Defendant.  Defendant has not demonstrated that no costs were incurred or that the

costs incurred limit Plaintiff's damages to a certain amount.  Defendant argues that the Plaintiff

may not recover based solely upon an increase in value of the property, such as suggested by the

subsequent sale price of the property.  While this Court agrees, summary judgment for the

Defendant is not justified on this basis because the Plaintiff does not appear to rely solely upon

the increase in value as the basis for its recovery.  Defendant introduced evidence that the buyer

purchased the property for the amount specified "primarily" due to its location.  Once again, this

would not preclude a recovery by Plaintiffs.  The evidence does not demonstrate that the

property would have had this same value unimproved and therefore that the improvements made

by the Debtor at its expense played no role in the increased value obtained by the Defendant on

resale of the property.

Defendant also argues that the purpose of a quantum meruit claim is to prevent unjust

enrichment which requires both that the Plaintiff have an "appropriate" expectation of repayment

and that Defendant receive a benefit which it would be unjust for it to retain.  On the former

point, Defendant argues that the Debtor could not have had such an expectation given the

contractual provision specifying that any improvements were to be made at the tenant's expense.

27

Once again, however, Defendant has not demonstrated that there is no genuine issue of fact on this question.  First, there is no evidence as to what Debtor's expectations were in making the improvements.  Second, whether any expectation of recovery would have been reasonable is a question of fact for the Court to decide.  Defendant relies solely on the existence of a contractual limitation or prohibition on recovery which is but one factor, albeit a significant one, that the Court should consider.  This is especially true when that very contractual provision is challenged as unconscionable.

Defendant argues that its retention of a benefit from the improvements made to the property would not be inequitable under the circumstances, noting that it had no authority to prevent or object to the improvements and that while it had knowledge that improvements were being made, had no specific knowledge of their scope or costs.  While this may be true, it does not change the fact that the improvements may have contributed significantly to the value of the property which the Defendant realized when it resold it.

Finally, Defendant argues that the relief sought in Count III is inconsistent with that sought by Plaintiff in Count V.  The Court agrees that if Plaintiff recovers on Count V, it cannot simultaneously recover on Count III.  If Plaintiff recovers on Count III it will necessarily recover the value of the property which would include that attributable to the improvements made.  Recovery on both claims would be duplicative.  The Plaintiff must therefore make an election, but it is not required to do so until submission of its claim to the trier of fact.  For that reason, the grant of summary judgment to Defendant on Count III at this time would be premature and the Court denies Defendant's motion for summary judgment on Count III.

## V.  CONCLUSION AND ORDER

28

For all the reasons cited above,  the Court denies Plaintiff's Motion for Summary

Judgment on Counts I, IV, V and VI, denies Defendants' motion for summary judgment on

Counts I, III, IV, and V, and grants Defendants' motion for summary judgment on Count VI.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated: _____October 11, 2006_____     ____/s/ Dennis R. Dow_____
                                          THE HONORABLE DENNIS R. DOW
                                          UNITED STATES BANKRUPTCY JUDGE


Copies to:

Brett D. Anders
R. Patrick Riordan
Robert Pummill